(No. 35348.—

WILLIAM A. NOTT *et al.*, Appellees, *vs.* WILLIAM A. WOLFF *et al.*—(LA SALLE NATIONAL BANK, Appellant.)

*Opinion filed January 22, 1960.*

Schradzke, Gould & Ratner, of Chicago, (Albert E. Jenner, Jr., Kenneth J. Burns, Jr., and Thompson, Raymond, Mayer, Jenner & Bloomstein, all of Chicago, of counsel,) for appellant.

Louis Ancel, Maurice J. Nathanson, Jack M. Siegel, and Sang & Carney, all of Chicago, for appellees.

Mr. Justice Hershey delivered the opinion of the court:

Plaintiffs, William A. Nott and William T. Krause, are in possession of lots 30 and 31 in Lakota, a subdivision of parts of blocks 1 to 5 in Gages Addition to the village of Wilmette, under a 35-year lease with option to purchase. These lots are vacant except for a refreshment stand on the front of lot 31. The lots have a frontage of 260 feet along the west side of Sheridan Road in the portion of the village known as No Man's Land. The plaintiffs planned to build a modern motor hotel on these lots. They executed the lease, and had an architect prepare the plans and specifications for the motor hotel at a fee of $11,250. Thereafter, on October 16, 1956, Nott and the architect presented the plans and specifications to the village building

commissioner, and on forms provided by the village applied for a permit to build the said motor hotel. The then zoning classification of the property permitted the erection of a motor hotel on these premises, although no motel, hotel, or other transient lodgings had ever been developed within any part of the village.

The building commissioner recommended two changes in the plans, which were made on October 21, 1956, on the face of the plans, to bring them into full compliance with the village codes. At the meeting of the village board on October 16, 1956, the village president instructed the village manager to delay approval of the requested building permit. On November 8, 1956, Nott tendered payment of the fee for the permit to the building commissioner, who refused the fee. On November 13, 1956, a request for the permit was made to the village manager, who informed the applicants that processing was not completed.

Plaintiffs had entered into a construction contract for $90,000 on November 3, 1956. A petition signed by village residents was presented to the village president and board of trustees on November 6, 1956, requesting the permit be denied and that the zoning ordinance be amended to prohibit motels and hotels in "E" Commercial Districts, as these premises were then zoned. On November 20, the village board referred a proposed zoning amendment to bar motels from "E" Commercial Districts to a special committee for public hearing.

Plaintiffs, on November 21, filed a petition for writ of *mandamus* commanding the village manager and the commissioner of buildings of the village of Wilmette to approve the plans submitted to them and to issue a building permit as requested. A supplemental petition for writ of *mandamus* was filed on December 20, 1956. In the meantime the village had held a hearing on the proposed amendment to the zoning ordinance, and on January 2, 1957, the board received the report of the special zoning committee. On

January 7 the amendment was adopted, the ordinance as amended was published on January 10, 1957, and became effective 10 days later.

On February 25, 1957, an amended supplemental petition for *mandamus* was filed, alleging the passage of the amended ordinance, and praying that the court declare the amendatory ordinance void, or void as applied to the subject property, and that a writ issue commanding the issuance of the building permit. The cause was referred to a referee for hearing. Hearing was had and evidence presented. The referee found the amendatory ordinance bore no reasonable relation to the public health, safety, comfort, morals and welfare, and was discriminatory, arbitrary, unreasonable and void as applied to the subject property. The referee's report recommended the court declare the amendatory ordinance void as applied to the subject property, and that the writ be issued as prayed. Objections to the report of the referee were filed by the defendant village, village manager and commissioner of buildings. The referee thereupon amended certain findings but did not vary his recommendations. On March 20, 1959, the cause was heard by the circuit court of Cook County upon the report of the referee and the exceptions of the defendants to the report, the transcript of testimony and evidence before the court, and upon arguments of counsel. The court thereupon overruled all exceptions to the referee's report, adopted the said report and all of its findings and recommendations and directed the writ to issue as prayed. The court additionally found that the validity of a municipal ordinance was involved and certified that the public interest required that an appeal be taken to this court. The permit was issued on March 26, 1959.

The defendants have not prosecuted an appeal, but on April 13, 1959, notice of appeal was filed by appellant, La Salle National Bank, a national banking association, as trustee under trust agreement dated November 21, 1956,

and known as trust No. 19815. Appellant was not a party to the proceedings below, but purports to be the owner of a lot adjoining the subject premises, and alleges that the construction of the motel proposed by plaintiffs would substantially and materially injure and detract from the value of its property, and that the judgment of the court entered March 20, 1959, is erroneous and should be reversed.

Plaintiffs filed their motion to dismiss this appeal, and a supplemental motion to dismiss, both of which are taken with the case. Plaintiffs assert that the appellant (1) is not a party of record, is not injured by the judgment, does not have an appealable interest and is thus without standing to appeal, and (2) that the question involved has become moot and an actual controversy does not exist.

It is provided in section 74(1) of the Civil Practice Act (Ill. Rev. Stat. 1957, chap. 110, par. 74) that the right heretofore possessed by a person not a party to the record to review a judgment or decree by writ of error is preserved by notice of appeal. We have held that before a person can successfully prosecute an appeal his interest in the suit must appear in the transcript of record or be alleged in the points relied upon for reversal. (*People ex rel. Yohnka* v. *Kennedy,* 367 Ill. 236; *Grennan* v. *Sheldon,* 401 Ill. 351.) It is essential that it appear that such person is injured by the judgment, or will be directly benefited by its reversal, or that he is competent to release errors. *Gibbons* v. *Cannaven,* 393 Ill. 376; *People ex rel. Altorfer* v. *City of Peoria,* 378 Ill. 572.

The village of Wilmette, and its village manager and buildings commissioner defended against this petition for writ of *mandamus.* The local authorities represented the public, including this appellant, and raised the same issues in defense of public and private interests now asserted by this appellant. However, the local authorities determined not to appeal the judgment below. This appellant has asserted the same issues in regard to its own property and

interests that the named defendants generally asserted for the public. They were sufficient issues upon which to base the trial of this cause, and should be adequate, in view of the failure of the public authorities to proceed, upon which to appeal a private interest which the village no longer purports to represent. This appellant owns an adjacent property and asserts that its interest and property rights will suffer injury and damage from the building of the proposed motel.

A prime issue in the cause is the validity of a village ordinance affecting an important segment of the general area, and justice appears to require a final and complete determination of the same. In view of the importance of this issue, the circumstances, and the assertions of interest and injury, we believe the motion to dismiss should be denied in this case, and the appellant permitted to proceed.

Appellant urges (1) that the plaintiff failed to overcome the presumptive validity of the questioned zoning ordinance by clear and convincing evidence; (2) that the findings of the referee do not support the judgment; and (3) the ordinance applies to plaintiffs' property, although enacted after plaintiffs applied for a building permit. In answer thereto plaintiffs assert the ordinance is unconstitutional and void; and that they substantially changed their position in reliance upon the probability of issuance of the permit and are entitled to build their motel.

It is true that where proper authorities adopt a zoning ordinance pursuant to legislative grant, a presumption favoring validity always obtains. (*First National Bank* v. *County of Lake*, 7 Ill.2d 213.) When one challenges the validity of a zoning ordinance which has been adopted pursuant to legislative grant, it is incumbent that he prove by clear and convincing evidence that it is, as applied to him, arbitrary and unreasonable and without substantial relation to the public health, safety or welfare. *Jacobson* v. *City of Evanston*, 10 Ill.2d 61.

It appears from the evidence that the area where the subject property is located is known as "No Man's Land," being a triangular area of twenty-two acres formerly wedged between Wilmette and Kenilworth. In January, 1942, it was annexed to Wilmette and the area north of Seventh Avenue, wherein the subject premises lie, was zoned as Commercial "E," permitting, among other uses, motels and motor courts. The general area of "No Man's Land" was improved with a fourteen hundred seat theater, several Spanish style, brick two-story buildings used for shops and residence apartments, an apartment building, gas stations, restaurants, auto sales, and parking areas, and the remainder was vacant. It is generally a commercial area which has not progressed in recent years. Immediately to the south of Seventh Avenue are vacant lots zoned residential. Sheridan Road traverses the area and is a major intercommunity arterial highway.

The well qualified witnesses produced by plaintiffs testified that, considering all factors, the highest and best use of the property would be as a motel. They testified the greatest income would be derived from a motel and that such use would upgrade the general area.

For defendants, Evert Kincaid, engaged in city planning, testified that he felt a motel at this location would not be successful, and the highest and best use for the property would be multiple-family dwellings. William McKnight, a banker and financier, a long time resident of Wilmette, and a village trustee, testified that his opinion was that Wilmette needed no hotels or motels.

Edwin A. Kayser, a real-estate broker of Kenilworth, testified there was no need for a motel in the area, and that the subject property is best suited for town houses. He stated his belief to be that the building of the motel would place more homes in the area on the market and reduce values.

The plaintiffs have shown that in reliance upon the then

existing zoning ordinances, and upon the representations of the village officials, they incurred expenditures, and applied for a permit. The application of the amended ordinance will effect a financial loss to plaintiffs. Plaintiffs' expert evidence shows that they would probably realize a greater return from a motel than other permitted uses. This is disputed by defendants, but nothing more than their opinion is shown. Plaintiffs' experts supplied projected figures based upon fully disclosed facts.

The evidence of the historical development of the "No Man's Land" area indicates that the commercial development of the area has not been very successful. With the exception of the shops with apartments along Spanish Court, there have been no other multiple-housing developments, nor are any shown to be contemplated. Many commercial enterprises have decayed or disappeared from the area. No real evidence of damage to the public is shown, other than the assertions that property values will be depreciated. No real substantial means of injury are shown, other than the assertion that traffic would be increased in the area of a heavily traveled thoroughfare, Sheridan Road.

Little gain is shown to the public by preventing the erection of this motel. The immediate area is commercial and there is little evidence of injury to the area by the establishment of a motel. There is some suggestion of injury to values of residences, but they are, in fact, relatively remote. The gain to the public is small as compared to the hardship of the owner. Thus there is no valid basis in the evidence for the exercise of the police power in amending the zoning ordinance and restricting this use of this property. *La Salle National Bank* v. *County of Cook*, 12 Ill.2d 40; *Petropoulis* v. *City of Chicago*, 5 Ill.2d 270.

It is apparent that the enactment of this ordinance was more emotional than necessary. The evidence fails to show any adverse effect upon the public health, morals, safety or welfare by the erection of the proposed motel, or any real

and substantial relation thereto of the amended ordinance. The character of the area is a downgrading commercial area. The surrounding area is commercial. The nearest residences are buffered by vacant lands from the subject property. The amended ordinance permits every commercial use theretofore permitted and indicated to adversely affect neighboring residential zoning, except motels, hotels, motor camps, motor hotels, motor courts, auto-washes, public dance halls, tourist camps or courts, and trailer courts or parks. The exclusion of motels, so that plaintiffs could not so improve their property, is unreasonable and arbitrary. (*Garden* v. *City of Wheaton,* 12 Ill.2d 284.) The plaintiffs met their burden, and overcame the presumption of validity.

It appears that in May of 1956 the village manager and the village building commissioner informed plaintiff Nott that a motel was a permitted use for the subject property. In June the plaintiffs entered into a thirty-five year lease, with option to purchase. The total sum payable under the lease being $147,000. In August plaintiffs retained an architect to prepare plans and specifications for a motel on the property, and in October, 1956, began proceedings for securing a building permit. The application was perfected on December 19, 1956, by completing an application for an occupancy permit. The amendatory ordinance was adopted on January 7, 1957, although proceedings leading to the adoption of the ordinance began the preceding November pursuant to the protests of certain residents of Wilmette.

The plaintiffs thus made a substantial change in their position, and incurred obligations in reliance upon the existing zoning ordinance then in effect, and in reliance upon the probable issuance of the building permit. The application for a building permit was actually completed in October, 1956, even though the application for the occupancy permit was by oversight not completed until December 19. The occupancy permit appears not to be

actually necessary to the erection of the motel, as it would not issue until the building was completed.

The substantial change of position by plaintiffs and their obligations incurred in reliance upon the issuance of the permit—based upon the existing zoning ordinance and assurances of village officials—entitles the plaintiffs to the building permit to complete the construction regardless of the amended zoning ordinance. *Deer Park Civic Ass'n* v. *City of Chicago,* 347 Ill. App. 346; *Fifteen Fifty North State Bldg. Corp.* v. *City of Chicago,* 15 Ill.2d 408.

We have, however, found the amended ordinance to be discriminatory, void and unconstitutional as applied to plaintiffs' property. The only defense to this petition for writ of *mandamus,* raised by defendants, was the existence of the amended ordinance of January 7, 1957. Therefore, the writ was properly issued, and the building permit was lawfully issued pursuant thereto. The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*