Commonwealth of Pennsylvania, Insurance Department *v.* The Pennsylvania Coal Mining Association, Kerry Coal Company, Moshannon Falls Mining Company, Shawville Coal Company, Sunbeam Coal Corporation, West Freedom Mining Corporation and Reading Anthracite Company, Appellants. Coal Mining Compensation Rating Bureau of Pennsylvania, Intervenor.

4

Argued March 1, 1976, before President Judge
Bowman and Judges Crumlish, Jr., Kramer, Wilkin-
son, Jr., Mencer and Blatt. Judge Rogers did not
participate.

*John M. Elliott,* with him *Steven L. Friedman,
Constance B. Foster,* and, of counsel, *Dilworth, Pax-
son, Kalish & Levy,* for appellants.

*Linda S. Lichtman,* Assistant Attorney General,
with her *Andrew F. Giffin,* Chief Counsel, for appel-
lee.

*Wilbur S. Legg,* with him *Spencer LeRoy; Lord, Bissell & Brook; Thomas R. Balaban;* and *Shaffer, Calkins & Balaban,* for intervening appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, June 1, 1976:

The Commonwealth of Pennsylvania, Insurance Department's (appellee) motion to quash this appeal as not having been taken from an "adjudication" and before the Pennsylvania Coal Mining Association and various individual coal companies (appellants) had exhausted their administrative remedies also highlights the substantive issues on appeal.

On June 27, 1975, the Coal Mine Compensation Rating Bureau of Pennsylvania submitted to the Insurance Commissioner its annual rate filing for the year beginning July 1, 1975. During the ensuing thirty day period, the Commissioner did not disapprove the rate filing, extend the waiting period for it to become effective or otherwise affirmatively act with respect thereto. The rate filing was thus "deemed" approved on August 1, 1975.[1]

The events which occurred between July 1, 1975, and a letter of the Commissioner to the appellants dated September 5, 1975, generated this dispute between the parties. The record discloses that incident to the July 1, 1975, rate filing, no particular publicity was

---

[1] Section 16 of the Act of December 5, 1974, P.L. 782 (footnoted at 40 P.S. §814), *amending* The Pennsylvania Workmen's Compensation Act and implementing the provisions of The Insurance Company Law of 1921, Act of May 17, 1921, P.L. 682, *as amended,* 40 P.S. §341 et seq., provides that a rate filing "shall be on file for a waiting period of thirty days with the Insurance Department before it becomes effective" and "shall be deemed to meet the requirements of this act and to become effective upon the termination of the thirty-day waiting period or an extension thereof unless disapproved, amended or modified by the commissioner within the waiting period or an extension thereof."

afforded it by the Commissioner or the Insurance Department. On or about July 16, 1975, appellants, having become aware of the filing, requested from the Commissioner a copy of the rate filing and stated that they "may well have objections to the filing and may seek to intervene in the proceedings." Copies of the filing were hand delivered to appellants on July 18, 1975. The next event occurred on August 11, 1975 (ten days after the "deemed" approval date), when appellants filed with the Commissioner a petition to intervene, which, in turn, was followed by a letter to the Commissioner dated August 21, 1975, complaining of his failure to act upon the petition to intervene and containing a formal request that the 1975 rate filing be rejected or suspended. The letter elicited a responding letter from the Commissioner dated September 5, 1975, which denied appellants' petition to intervene as untimely filed inasmuch as the rate filing was deemed approved on August 1, 1975. It is from this letter that this appeal has been taken.

In its motion to quash the appeal and in support of dismissing the appeal, appellee contends that appellants had and continue to have a right to seek administrative review of the now approved 1975 rate filing under Section 654 of The Insurance Company Law of 1921, 40 P.S. §814, and that this appeal is an improper and thinly veiled but successful attempt, through a court granted supersedeas on appeal, to suspend a rate filing lawfully in effect but subject to future modification or amendment through the administrative review procedure. This argument also buttresses appellee's contention that the Commissioner's letter of September 5, 1975, not having denied to appellants any procedural or property rights, is not an adjudication for which an appeal lies.

As we agree with appellee on both points, we shall dismiss the appeal.

Appellants would have us find in the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, *as amended,* 71 P.S. §1710.1 et seq., and as within their constitutionally protected due process rights, as persons affected by the rate filing, a right to notice thereof and an opportunity to be heard. Having been assertedly denied these rights, appellants would have us further conclude that the Commissioner's letter of September 5, 1975, denying their petition to intervene, constitutes an adjudication from which the instant appeal properly lies.

The initial asserted right in appellants to notice of the rate filing from which other statutory and constitutional due process rights would flow, cannot be found in the relevant statutory law nor as a constitutional due process requirement. Absent such a requirement, the applicable statutory law does not deny to appellants any constitutional due process rights nor does the Commissioner's letter of September 5, 1975, constitute an adjudication affecting appellants' statutory or constitutionally protected property rights.

Section 31 of the Administrative Agency Law, 71 P.S. §1710.31, provides that no adjudication shall be valid as to any *party* absent reasonable notice of hearing and an opportunity to be heard. Section 2 of that Act, 71 P.S. §1710.2, defines a "party" as one who appears in a proceeding before an administrative agency who has a direct interest in the subject matter. An "adjudication" is defined as the final action of an agency affecting personal or property rights of a *party* to that proceeding.

As insureds subject to the rate increases contained in the 1975 rate filing, appellants are clearly affected by it and interested in it. This in itself, however, does not make them parties to the proceedings, and it is only upon parties to an administrative proceedings that this statute confers the rights appellants here assert. This Act contains no provision for public notice

of a proceedings that may or does have an impact upon the general public, nor is there a requirement that some form of notice be given to all persons who may be or are affected by the proceedings. It requires only that parties to a proceedings resulting in an adjudication be given reasonable notice of hearing and an opportunity to be heard.

A person is a party to an administrative proceeding if named as such or he may become a party by timely action if authorized by other applicable statutory law to do so or his interest therein is of constitutional proportions. Appellants have not and cannot point to other statutory law requiring them to be given notice of or named as parties to the 1975 rate filing proceedings. Nor did they timely seek status as an intervening party notwithstanding their knowledge of the filing by mid-July, at which time they had a reasonable period to do so (before the ''deemed'' approval of the filing). That they then expressed the view that ''they may seek to intervene in the proceedings'' is a clear recognition that they did not consider themselves to be parties at that time.

Appellants' reliance upon Attorney General Opinion No. 74-18, 4 Pa. B. 786, is misplaced. In response to an inquiry from the Insurance Commissioner, the Attorney General concluded that under the several rate regulatory statutes a person affected by a rate filing may have access thereto and to the insurer's supporting information submitted with the filing. This opinion may be supporting authority for the right of appellants to intervene in rate filing proceedings and thereby become parties; it is not authority for the proposition that every person affected by or interested in a rate filing is thereby a party to the proceedings under the Administrative Agency Law.

As appellants were not and are not parties to the proceedings here in question, they wholly lack stand-

ing to appeal from the deemed approval of the rate filing. [2]

Nor does the Commissioner's letter of September 5, 1975, constitute an adjudication for the purposes which appellants here advance, namely, to afford the basis for appeal through which the opposed rate filing be set aside and directed to be reopened. We have on a number of occasions found a communication to be an adjudication where a party to an administrative proceeding was by the communication denied a constitutional right or a right afforded him by the Administrative Agency Law or other statutory law. The essence of these decisions is when such a right is denied, it is of little moment whether the denial is expressed in a formal adjudication, by a simple communication, or otherwise. *See Newport Homes, Inc. v. Kassab,* 17 Pa. Commonwealth Ct. 317, 332 A.2d 568 (1975); *McKinley v. State Board of Funeral Directors,* 5 Pa. Commonwealth Ct. 42, 288 A.2d 840 (1972). In each of these cases, a person was seeking the authority or the approval of an administrative agency to do something which he contended he had a right to do only to be rebuffed without an opportunity to be heard. In the instant case, the Commissioner's communication could only be considered an adjudication to the extent that he denied appellants' petition to intervene as untimely filed, an issue which appellants do not raise in this appeal.

This brings us to Section 654 of The Insurance Company Law of 1921 as implemented by Section 16 of the Act of December 5, 1974.

---

[2] Appellee points out that if it is assumed appellants are parties to the rate filing proceedings, an appeal from the deemed approval thereof on August 1, 1975, required an appeal to be taken within thirty days. The instant appeal was taken after the expiration of that period.

These statutory provisions contain no requirement that public notice or notice to affected insureds be given of a rate proceedings. They do require the Commissioner to review the filing, but the Act of 1974 explicitly authorized him, in his discretion, to refrain from affirmatively acting, in which event approval of the rate filing follows upon passage of the prescribed thirty day waiting period. This is precisely what happened here.

On the subject of a right in appellants to notice and the concomitant right to be heard as constitutionally protected rights, appellants rely upon *Jordan v. American Eagle Fire Ins. Co.*, 169 F.2d 281 (D.C. Cir. 1948) and *Commonwealth ex rel. Finken v. Roop*, 234 Pa. Superior Ct. 155, 339 A.2d 764 (1975). Rather than supporting appellants, these cases demonstrate that appellants' interest as insured affected by a rate increase is not of such proportions as to afford them a constitutionally protected right to notice and opportunity to be heard.

*Jordan* involved an insurance rate review made by the Insurance Department of the District of Columbia, and, after pointing out that the rate-making functions of insurance departments and other similarly vested agencies have historically been viewed as legislative or quasi-legislative functions, the court noted that a full hearing in the judicial sense need not be afforded in all cases during the legislative or quasi-legislative part of the procedure performed by an agency, and that:

"As we see it, the modern custom of placing that hearing in that part of the procedure is a matter of desirability by reason of expertise, and not a matter of constitutional necessity." 169 F.2d at 290-91.

In *Roop*, the appellant challenged the constitutionality of Section 406 of the Mental Health and Mental Retardation Act of 1966, Act of October 20, 1966, Special Sess., P.L. 96, *as amended,* 50 P.S. §4406, under

which he had been committed. His commitment was the result of a hearing of which he had had one day's notice. Under Section 406, the court was required to (1) issue a warrant requiring that the person be brought before the court; (2) fix a date for a hearing; and (3) notify the *parties in interest*. The court said that it was clear that appellant was a party in interest and found that one day's notice was inadequate, especially where a major curtailment of individual liberty, a fundamental right, was involved. The court went on to say that adequate notice should be read into the statute since it had to be presumed that the legislature did not intend to violate the Constitution.

In so concluding, the *Roop* court discusses at some length one's due process rights in relation to the personal or property interests of those involved in the governmental action taken. In this case, there are no fundamental personal or property rights involved nor is the governmental action specifically directed against the appellants as insureds affected by a rate proceedings. Their interest as being affected by increased rates is not within the scope of personal or property rights enjoying the protection of a due process requirement of notice of the proceedings.

Of controlling significance as to other constitutional issues raised by appellants is a provision of Section 64, which reads:

"Any person, corporate or otherwise, aggrieved by such order ... [or] rate ... issued by the Insurance Commissioner may obtain a review thereof before the Insurance Commissioner, and if still aggrieved by such reviewed order ... [or] rate ... may obtain a further review thereof in the Common Pleas Court of Dauphin County [3] ... by filing in the said court a written peti-

---

[3] This jurisdiction is now in the Commonwealth Court of Pennsylvania, Section 508(a)(26), Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, *as amended*, 17 P.S. §211.508 (a)(26).

tion praying that the order . . . [or] rate . . . be modified, amended or set aside in whole or in part. The commencement of proceedings under this section shall not, unless specifically ordered by the court, operate as a stay of the Insurance Commissioner's order.'' (Footnote added.)

Any constitutional due process requirements of a right to be heard, which appellants *may* enjoy as per-*sons* aggrieved by an approved rate filing—a right which we do not here declare to exist—is satisfied by this statutory provision. When considered together with appellants' right to intervene in the original rate proceedings, albeit not timely exercised by them, appellants' due process rights to be heard are amply protected at all stages of the administrative process.

Equally fully protected is their right to judicial review of administrative action as prescribed by Article V, Section 9, of our Constitution. Had they become parties to the original rate proceedings or had the asserted want of notice and opportunity to be heard in the original rate proceedings abridged a fundamental personal or property right enjoyed by them, they had a right to appeal from the approval of the original rate proceedings. Had they sought administrative review of the original rate proceedings as prescribed by this statute, and believing themselves aggrieved thereby, they would enjoy a right to judicial review of the administrative action taken.

They cannot, as they seek to do by way of this appeal, have the original rate proceedings opened and the approved rates set aside in the meantime.

## ORDER

NOW, June 1, 1976, the above appeal is hereby dismissed without prejudice to the appellants to seek administrative review of the 1975 rate filing heretofore approved and in effect.

Judge KRAMER did not participate in the decision in this case.